T.C. Memo. 2011-137

UNITED STATES TAX COURT

MARK S. AND CHERYL R. GARDNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15676-09.                    Filed June 20, 2011.

<u>Gregory P. White</u>, for petitioners.

<u>Molly H. Donohue</u> and <u>Mary P. Hamilton</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, <u>Judge</u>:  Respondent determined a $39,059 deficiency
in, and a $9,764.75 addition to tax with respect to, petitioners'
2004 Federal income tax.

The parties have resolved several of the adjustments giving
rise to that deficiency, and some are only computational.  They
have left two issues for us to decide:  (1) The character of gain

realized on petitioner husband's disposition of a portion of one parcel of real property and (2) his purpose in holding a second parcel of real property.  Petitioners assigned no error to respondent's determination of the addition to tax (for failure to file timely their 2004 return), nor do they address it on brief, beyond conceding that they were late in filing that return.  We assume, therefore, that they concede their liability for the addition to tax (adjusted to take account of the deficiency we redetermine), and we shall not further address it.  See Rule 151(e)(4) and (5); Sundstrand Corp. & Subs. v. Commissioner, 96 T.C. 226, 344 (1991).

Unless otherwise stated, section references are to the Internal Revenue Code in effect for 2004, and Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners bear the burden of proof.  See Rule 142(a).[1]

---

[1]Petitioners have not raised the issue of sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations.  We conclude that sec. 7491(a) does not apply here because petitioners have not produced any evidence that they have satisfied the preconditions for its application.

FINDINGS OF FACT

Introduction

Some facts have been stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

Petitioners, husband and wife, resided in Massachusetts at the time they filed the petition.

For 2004, they made a joint return of income on Form 1040, U.S. Individual Income Tax Return, for that year.

Petitioner's Real Estate Activities in General

Petitioner husband (petitioner) is self-employed. On a Schedule C, Profit or Loss From Business, attached to their 2004 Form 1040, petitioner described his business as "carpentry/site contracting". Over approximately the last 26 years, petitioner bought and sold 16 parcels of real property. Often, he would buy unimproved land, build a single-family residence thereon, and immediately sell the improved property. Occasionally, he bought and sold unimproved land. Petitioner also bought unimproved land and constructed multifamily housing thereon or bought land improved with multifamily housing and improved the housing. Petitioner did not immediately sell his multifamily housing properties but kept them for rental income.

Petitioner used brokers to assist in the sale of many of the properties he sold. He maintains a business office outside his home but employs no staff at the office.

Petitioner's Purchases and Sales of Multifamily Properties

Petitioner purchased a five-family property on School Street in Rockland, Massachusetts (Rockland), in 1983 and still owns it. He acquired property on Myrtle Street in Rockland in 1984, constructed a two-family rental unit thereon, and sold the property in 1989. He purchased property improved by a two-family rental unit on Blanchard Street in Rockland in 1986 and sold it in 1990. He purchased rental property on Church and Howard Streets in Rockland in 1987 and still owns it. He purchased property improved by a five-family rental unit on Oak Street in Middleboro, Massachusetts, in 2006 and still owns it.

East Water Street Property

In March 2004, petitioner purchased from his brother and sister-in-law property on East Water Street in Rockland that had been approved for subdivision into five lots. After acquiring the property, petitioner built a road on it, which was necessary to access the five lots. He conveyed to his brother one of the lots, on which he constructed a house for his brother and his family. In November 2004, petitioner sold three of the remaining lots (the three lots) for $750,000. Petitioners reported the gain from the sale of the three lots on Schedule D, Capital Gains

and Losses, to their 2004 Form 1040, claiming a basis of $376,159 and showing a short-term capital gain of $373,841. Petitioner sold the remaining lot in 2005 for $215,742. Respondent disallowed petitioners' treatment of the gain from the sale of the three lots as short-term capital gain and recharacterized the transaction as a sale of property held for sale to customers in the ordinary course of petitioner's trade or business, which respondent treated as a transaction reportable on the Schedule C. Because of the resulting increase in petitioner's Schedule C income, respondent increased petitioner's net earnings from self-employment, which gave rise to a $16,104 increase in petitioner's self-employment tax (and an offsetting self-employment tax deduction of $8,052).

Petitioner testified that the three lots were "duplex lots" (we assume lots appropriate for building duplex housing) and his original intention was to keep those lots "to add to my investor status but unfortunately the roadway cost me so * * * [much] I had to sell those lots. I had no choice."

242 Beech Street Property

In 1997, petitioner purchased a 34-acre industrial lot at 242 Beech Street in Rockland. He testified that he had purchased the property for investment and thought that he had paid $400,000 for it. Thereafter, he obtained approval to subdivide the property into 79 lots. In 2006, he sold the property for $4

million.  During 2004, petitioner kept heavy equipment related to his carpentry/contracting business on the property.  Petitioner did not rent the property to anyone during the time he owned it.

On Schedule E, Supplemental Income and Loss, to their 2004 Form 1040, with respect to the property, petitioners claimed a $99,956 deduction for:  (1) Legal and other professional fees of $62,967, (2) mortgage interest of $26,860, and (3) real estate taxes of $10,129 (together, the Schedule E expenses), all of which respondent disallowed on the ground that the Schedule E expenses did not relate to rental of the property.  Petitioner actually paid the $62,967 claimed to be for legal and other professional fees for engineering services attendant to surveying and subdividing the property.

OPINION

I.   <u>Gain From the Sale of the Three Lots</u>

We must determine whether the character of petitioner's gain from the sale of the three lots was capital gain (short-term capital gain) or gain from the sale of property held primarily for sale to customers in the ordinary course of his business.  If the latter, the principal negative consequence to petitioner appears to be an increase in his net earnings from self-employment and the imposition of a self-employment tax (offset, in part, by a self-employment tax deduction).

In relevant part, section 1221(a)(1) excludes from the definition of a capital asset "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business".

Respondent argues that petitioner has a 20-year history of buying real properties, improving them, and then selling them. Respondent would include in that description the East Water Street property, which included the three lots. Respondent states: "Petitioner's purpose in acquiring and holding the East Water Street property was to sell the subdivided lots." Respondent argues that a consideration of the factors that courts have recognized as helpful guides in determining whether a taxpayer is holding property for sale in the business of buying, developing, and selling property indicates just that with respect to petitioner and the three lots.

Petitioner concedes that he was a dealer in real properties but argues that he was also an investor:

> The difference being delineated in [is] the variety in
> nature and extent of his various business interests.
> There is little long term investment profit in the
> single family rental business but the extent and
> duration of the Petitioner's holdings of multi-family
> properties/inventory evidences the investment value of
> the multi family rental business.

He adds: "The 'multis' were investment portfolio properties held not to be sold in the ordinary course but to generate rental income."

The parties agree that <u>Mathews v. Commissioner</u>, 315 F.2d 101 (6th Cir. 1963), affg. T.C. Memo. 1961-213, is representative of the numerous cases distinguishing between property a taxpayer holds for investment and property he holds primarily for sale to customers in the ordinary course of his business. In <u>Mathews v. Commissioner</u>, <u>supra</u> at 106, the Court of Appeals stated: "It is true * * * that a taxpayer may hold lands primarily for sale to customers in the ordinary course of his trade or business and, at the same time, hold other lands for investment." It continued:

> It is well settled that the question whether property sold by a taxpayer at a profit was property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, within the meaning of the statute, is essentially a question of fact. * * * No single factor or test is dispositive. Among the factors considered are: (1) the purpose for which the property was acquired; (2) the purpose for which it was held; (3) improvements and their extent, made to the property by taxpayer; (4) frequency, number and continuity of sales; (5) the extent and substantiality of the transactions; (6) the nature and extent of taxpayer's business; (7) the extent of advertising to promote sales, or the lack of such advertising; and (8) listing of the property for sale directly or through brokers.

<u>Id.</u> at 107.

Petitioner was a credible witness, and we accept his testimony and find accordingly that he purchased the East Water Street property for investment purposes, in part to build duplex

rental units on the three lots.  Petitioner also convinced us that he purchased or constructed multifamily rental units not for immediate sale to customers but, rather, as an investment, for rental income and, we assume, appreciation.  Certainly, he did sell two of the multifamily rental units, see supra p. 4, but only after holding them for 4 or 5 years.  He has owned two other of those units for over 20 years and the fifth for 4 years.  While petitioner did not detail for us the financial pressures that caused him to conclude that he could not develop the three lots as multifamily housing notwithstanding that he could sell them at what appears to be a substantial profit, we are persuaded that the three lots were intended for petitioner's multifamily rental activity and not his build-and-sell activity.  We therefore find that petitioner did not hold the three lots primarily for sale to customers in the ordinary course of his business.  The lots were capital assets, and the resulting gain was short-term capital gain.

II.  Schedule E Expenses

Petitioner purchased 242 Beech Street in 1997.  He held the property for 9 years and then sold it for a substantial profit.  During the interval, he incurred expenses for engineering services attendant to surveying and subdividing the property, and

he obtained permission to subdivide it into 79 lots.  He kept heavy equipment on a portion of the property.  He obtained no rental income from it.

Petitioner argues that the property was integral to his business and that the Schedule E expenses incurred with respect to the property for engineering services, interest, and taxes are deductible under section 162 as ordinary and necessary business expenses.

Section 263A requires the capitalization of certain costs (e.g., interest and taxes) that might otherwise be deductible. Respondent argues that the Schedule E expenses must be capitalized pursuant to section 263A because:  (1) They are direct or indirect costs of the property and (2) the property is property to which that section applies; viz, real property "produced" by petitioner.[2]  See sec. 263A(a)(1)(B), (2), and (b)(1).

---

[2]At trial, on questioning by the Court, respondent's counsel conceded that the Schedule E expenses consisting of interest and taxes would be deductible whether they were properly reportable on Schedule E or on the Schedule C.  Subsequently, counsel asked to address on brief whether they should be deductible.  We agreed.  In his brief, respondent argues that the interest and taxes are capital expenditures and not immediately deductible. Petitioner had the opportunity in his reply brief to address respondent's arguments with respect to the interest and taxes, but chose not to do so.  We shall, therefore, relieve respondent of his concession.

For purposes of section 263A, the term "produce" includes "construct, build, install, manufacture, develop, or improve." Sec. 263A(g)(1).

In pertinent part, section 1.263A-2(a)(3)(ii), Income Tax Regs., provides:

> (ii) Pre-production costs.  If property is held for future production, taxpayers must capitalize direct and indirect costs allocable to such property (e.g., purchasing, storage, handling, and other costs), even though production has not begun.  If property is not held for production, indirect costs incurred prior to the beginning of the production period must be allocated to the property and capitalized if, at the time the costs are incurred, it is reasonably likely that production will occur at some future date.  Thus, for example, * * * a real estate developer must capitalize property taxes incurred with respect to property if, at the time the taxes are incurred, it is reasonably likely that the property will be subsequently developed.

Among the indirect costs of property that must be capitalized under section 263A are taxes, see sec. 1.263A-1(e)(3)(ii)(L), Income Tax Regs., and engineering and design costs, see sec. 1.263A-1(e)(3)(ii)(P), Income Tax Regs.

Also, interest paid or incurred during the production period of real property must be capitalized under the special rules of section 263A(f).  Sec. 263A(f)(1)(A), (B)(i), (4)(A)(i); sec. 1.263A-12(a), Income Tax Regs. (in contrast to interest, commencement of production period is not a threshold for capitalization of other direct and indirect costs associated with production).  The term "production period" means the period

beginning on the date on which production of the property begins and ending on the date on which the property is ready to be placed in service or is ready to be held for sale. Sec. 263A(f)(4)(B). The production period for real property begins when any physical production activity begins. See sec. 1.263A-12(c)(2), (e), (f), Income Tax Regs. Planning and design activities, however, are not considered physical production activities. Sec. 1.263A-12(f)(1), Income Tax Regs.

Petitioner testified that he purchased the property for investment, but he did not further describe his investment objectives. We take from the fact that he did not rent the property but prepared it for subdivision that his investment objective was to subdivide the property and sell it. While he did keep heavy equipment on the property, we are unconvinced that such use was other than incidental to his objective of developing the property by subdividing it and then reselling it. We conclude that, during 2004, petitioner held the property for production within the meaning of section 263A and the regulations thereunder. See sec. 263A(g)(1) (including as production development and improvement). We further conclude, however, that, during 2004, no physical production activity on the property had commenced. Petitioner's planning and design activities did not constitute physical production. See sec. 1.263A-12(f)(1), Income Tax Regs. Nor, without more, do we

consider the storage of vehicles on the property a physical production activity.

Therefore, the Schedule E expenses of $62,967 and $10,129 for engineering services and real estate taxes, respectively, must be capitalized; the mortgage interest expense of $26,860 is not capitalized.

Decision will be entered

under Rule 155.